**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.  21-60277-CIV-JEM**

IAN HUE, an individual,

　　　　Plaintiff,

vs.

SAMUEL'S AUTO FL., LLC,
a Florida limited liability company
d/b/a "Samuel's Auto,"

　　　　Defendant.

_____/

## MEMORANDUM IN OPPOSITION TO DEFENDANT SAMUEL'S AUTO FL, LLC'S MOTION TO DISMISS COUNTS 1, III, IV AND V AND MEMORANDUM OF LAW

Plaintiff, Ian Hue, an individual ("Mr. Hue"), by and through his undersigned attorney, pursuant to Rule 7.1, Local Rules of the United States District Court for the Southern District of Florida, files this his Memorandum of Law in Opposition to Defendant Samuel's Auto FL, LLC's Motion to Dismiss Counts I, II, IV and V and Memorandum of Law ("Motion to Dismiss") [DE 8] filed herein by Defendant, Samuel's Auto FL, LLC, a Florida limited liability company doing business as "Samuel's Auto" ("Samuel's Auto" or "Dealership"):

## I.  OVERVIEW OF LITIGATION

### A.  Review of Complaint Allegations

#### *Purchase of Van for Hue Family as a Weekend Camper*

This lawsuit involves a used car dealership selling a family a badly wrecked late model van with a salvaged title, missing airbags, and a busted odometer. By any objective measure, the

dealership unloaded the van on an unsuspecting customer without any semblance of compliance with federal and state consumer disclosure requirements.

In May 2020, Mr. Hue was in the market for a late-model cargo van to convert for use as a weekend camper for his family. After searching the internet, Mr. Hue found a 2019 RAM 3500 ProMaster Cargo Van ("Van") advertised by the Dealership on E-Bay. (Complaint - ¶10-11).

As the Van was late model and had low mileage, Mr. Hue contacted the Dealership directly (Compl. - ¶11). In the ensuing conversation with Mr. Hue, the Dealership represented to Mr. Hue the following:

- that the Van was in excellent condition and had no mechanical defects ("Condition Representation"); and

- that the Van was low mileage and had "8,000 miles" ("Oral Mileage Representation").
  (Compl.- ¶12).

After Mr. Hue related to the Dealership that Mr. Hue intended to convert the Van to a family camper, the Dealership affirmatively represented that the Van would be fit for a camper conversion ("Fitness Representation"). (Compl.- ¶13). At the request of Mr. Hue, the Dealership emailed to Mr. Hue a Buyer's Order for the purchase of the Van ("Buyer's Order Email"). A copy of the Buyer's Order Email from the Dealership to Mr. Hue concerning the purchase of the Van is attached to the Complaint as Exhibit "A." (Compl.- ¶13-14).

As an attachment to the Buyer's Order Email, the Dealership provided Mr. Hue with a one-page document entitled "Bill of Sale/Buyer's Order" ("Bill of Sale").[1] Pursuant to the Bill of Sale, the Dealership made an affirmative representation to Mr. Hue that the odometer reading for

---

[1] The Bill of Sale sent to Mr. Hue did not have a reverse side.

the Van was **8,021** miles ("Initial Written Mileage Representation"). (Compl.- ¶16-17).

After reviewing the Bill of Sale, on July 8, 2029, Mr. Hue signed and returned the Bill of Sale by email to the Dealership. A copy of the email transmittal and the signed Bill of Sale is attached to the Complaint as Ex. "B." (Compl.- ¶18-19).

Pursuant to the Bill of Sale, Mr. Hue agreed to purchase the Van for the total purchase price in cash for $30,000.00 ("Purchase Price"). After returning the signed Bill of Sale to the Dealership, Mr. Hue wire-transferred the Purchase Price to the Dealership. (Compl.- ¶20-21). After payment of the Purchase Price, Van was delivered to Mr. Hue at his home in Calistoga, California. (Compl.- ¶22).

### Discovery that Van had a Re-Built Title and Inaccurate Odometer

Several days after the Van was delivered to Mr. Hue, Mr. Hue received a package in the mail that contained the following:

- Motor Vehicle Title Reassignment Supplement ("Reassignment")- attached to the Complaint as Ex. "C"; and

- Original State of Minnesota Certificate of Title ("Minnesota Salvage Title")- Ex. "D" as filed under the Notice of Filing Omitted Exhibit to Complaint [DE 10-1]

(Compl.- ¶24).

When Mr. Hue reviewed the Minnesota Salvage Title, Mr. Hue discovered for the first time that the Dealership had sold him a wrecked vehicle that had a salvage title brand:



("Salvage Brand") (Compl.- ¶24).

In addition to selling Mr. Hue a wrecked vehicle, the Dealership also sold Mr. Hue a vehicle with an inaccurate or tampered odometer as the Minnesota Salvage Title provided:



("NAM Disclosure") (Compl.- ¶25).

As seen above, the NAM Disclosure stated that the mileage reading of 8,041 was "***not actual mileage***." (Compl.- ¶26).

In addition to the Initial Mileage Representation, the Dealership falsely represented through the Reassignment that the mileage reading of 8,041 was "***actual mileage***":

(“Second Mileage Representation”) (Compl.- ¶27).

The Second Written Mileage Representation was made by the Dealership under penalty of perjury. (Compl.- ¶28).

After learning that he had been severely cheated, Mr. Hue demanded the return of his money. The Dealership refused. (Compl.- ¶29-30).

As part of his investigation concerning the history of the Van, Mr. Hue through counsel learned that the Van had been part of an *Amazon* delivery fleet in Minnesota and had been wrecked in early 2020. The photos obtained from a salvage auction website depicting the substantial damage to the Van are reproduced in the Complaint. (Compl.- ¶31-32).

Mr. Hue had the Van inspected by a reputable repair facility near his home.  The repair facility opined that the Van needed repairs totaling over $18,000 to make the Van roadworthy and safe. The repair facility also determined that the airbags to the Van had not been replaced after the accident. (Compl.- ¶33-36).

Fla. Stat. §319.14 provides in pertinent part that a person may not knowingly sell, exchange, or transfer a salvaged or rebuilt vehicle referred without, before consummating the sale, exchange, or transfer, **disclosing in writing** to the purchaser, customer, or transferee the fact that is a vehicle that is rebuilt. The Dealership knowingly failed to disclose to Mr. Hue that the Van

was a rebuilt vehicle with an inaccurate odometer. (Compl.- ¶37-38).

*         *         *

As a result of the fraud and deception of the Dealership, Mr. Hue seeks redress for violation of the Federal Odometer Act (Count I), the Florida Deceptive and Unfair Trade Practices Act (Count II), fraud (Count III), negligent misrepresentation (Count IV), fraudulent inducement (Count V), breach of implied warranty of merchantability (Count VI) and breach of implied warranty of fitness for particular purpose (Count VIII).

### B. Overview of Motion to Dismiss

In response to the Complaint, the Dealership has filed what can best described as a thin motion to dismiss. Other than parroting the well-traveled *Twombly-Iqbal* "plausibility standard," no caselaw or authority is offered to support its effort to dismiss Counts I, III, IV and V. (Mot.to Dismiss- p. 2-4).

## II.  SYNOPSIS OF APPLICABLE FEDERAL CONSUMER LAW

### A.  Overview of Odometer Act

Congress passed the Odometer Act [2] to prevent fraud in the sale of motor vehicles. The Congressional intent in passing the Act was to prevent odometer tampering and to provide other general safeguards for the protection of consumers- including disclosure. 49 U.S.C. §32701(b).

The Act has four major substantive provisions relating to odometers:

- the Act prohibits odometer tampering, advertising or selling odometer fraud devices, and operating a vehicle knowing the odometer is not functioning, 49

---

[2] Previously known as the "Motor Vehicle and Information Cost Savings Act."

U.S.C. §32703;

• the Act establishes procedures to follow when a motor vehicle repair results in the change of an odometer reading, 49 U.S.C. §32704;

• the Act requires that each time a vehicle is transferred, that the transfer disclose the odometer reading and whether the odometer reading is accurate, 49 U.S.C. §32705; and

• the Act prohibits parties from conspiring to violate any of the Act's provisions, 49 U.S.C. §32703(4).

**The federal claims in this lawsuit are based primarily on the Dealership violating the Act's disclosure requirements of 49 U.S.C. §32705, not on a claim of tampering under 49 U.S.C. §32703.[3]**

### B. The Courts Broadly Construe and Vigorously Enforce the Odometer Act

The Odometer Act is to be broadly and vigorously applied to accomplish the Act's purposes. "The statute is obviously remedial in nature and should be broadly construed to effectuate its purpose." *Ryan v. Edwards*, 592 F.2d 756, 759-60 (4th Cir. 1979); *Hughes v. Fox*, 814 F.2d 498, 501 (8th Cir. 1987); *Sarratore v. Longview Van Corp.*, 666 F. Supp 1257 (N.D.In. 1987); *Stien v. Park Pontiac*, 391 F.Supp 397 (S.D. W.Va. 1975)  A broad construction of the federal Act serves an important public policy. Congress sought to require accurate odometer statements and other pertinent information concerning motor vehicles to penalize those that engage in odometer tampering and related wrongdoing. The provision of specific statutory obligations, a private right of action, minimum statutory damages, treble damages and attorney's fees to the

---

[3]To be sure, Mr. Hue will seek discovery as tampering.

prevailing plaintiffs all evince a policy of encouraging private litigation to foster a specific public policy. *Compare*, *Ives v. City of Riviera Beach*, 166 F.3d 1332 (11th Cir.1999)[liberal construction of term employer in Title VII action]; *Ellis v. General Motors Acceptance Corp.*, 160 F.3d 703, 707 (11th Cir.1998) ["in this case, we examine TILA [Truth in Lending Act], a consumer protection statute which … is remedial in nature and therefore must be construed liberally in order to best serve Congress' intent]; *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168 (11th Cir.1985) [in the context of a Fair Debt Collection Practices Act claim, 11th Circuit adopted more liberal "least sophisticated consumer" standard as opposed to "reasonable consumer" standard in evaluating collector conduct]; *Jordan v. Transnational Motors*, 537 NW 2d 471 (1995) [Magnuson-Moss Act to be liberally construed as remedial statute].

As a salient example of the broad scope of the Act, the Act provides for a civil enforcement action without a restriction on the class of persons entitled to sue. 49 U.S.C. §32710. A person suing need not have been damaged; there is a minimum statutory award of $10,000.00 to encourage persons who discover and act on violations. *Evans v. Paradise Motors, Inc.*, 1121 F. Supp. 250 (N.D. Ca.1989).

In *Evans,* an offeree who did not even purchase a tampered car was held to be entitled to sue the dealership. The District Court for the Northern District of California stated:

> The aggressive statutory scheme suggests a generous reading of the standing requirement … the most effective private attorneys general are the most vigilant, those that will detect the fraud at the earliest opportunity. Certainly, Congress did not intend to prevent this class from representing the public in the court."

*Id.* at 251.

As discussed below, the application of the Act to the facts of the instant case — the marketing and sale of an undisclosed salvage vehicle with an inaccurate odometer— is especially

appropriate.

## II.  STANDARD OF REVIEW

Until relatively recent, federal courts routinely followed the rules set forth in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) that "a complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief." However, pursuant to the United States Supreme Court opinion in *Bell Atlantic Corporation v. Twombly*, 127 S. Ct. 1955 (2007), to survive a motion to dismiss, a complaint must now contain factual allegations that sufficiently raise a right to relief above a speculative level. *Bell Atlantic Corporation*, 127 S. Ct. at 1965.  As under *Conley*, the complaint must be liberally construed, assuming the facts alleged therein as true and drawing all reasonable inferences from those facts in the plaintiff's favor. *Id.* at 1964-65; *see*, *Stephens v. Dept. of Health and Human Services*, 901 F.2d 1571, 1573 (11th Cir.1990). A complaint should not be dismissed simply because the court is doubtful that the plaintiff will be able to prove all the necessary factual allegations. *Id.*  Accordingly, a well-pleaded complaint will survive a motion to dismiss even if it appears that a recovery is very remote and unlikely. *Id.* at 1965; *Iqbal v. Ashcroft*, 566 U.S. 662, 129 S. Ct. 1937, 1940 (2009) [pleading standards do not require "detailed factual allegations"].

## III.  LEGAL ARGUMENT

### A.    THE COMPLAINT SUFFICIENTLY ALLEGES THAT THE DEALERSHIP MADE REPEATED FALSE STATEMENTS -EVEN UNDER OATH- AS TO MILEAGE ACCURACY.

#### 1.  The Dealership Gave Multiple False Odometer Disclosures.

##### a.  *Introduction*

The Act's disclosure requirements are central to the Act's effectiveness. Even if a transferor has not tampered with an odometer (in fact, even if an odometer was never rolled back), a transferor may violate the Act by violating the disclosure requirements. *See, Ryan v. Edwards,* 592 F.2d 756, 760 n.4 (4th Cir. 1979) (tampering and disclosure violations are alternative claims under the Act); *Resendiz v. Eatinger*, 1990 WL 84527 (N.D. Ill. June 8, 1990). Disclosures are important because they create a paper trail of the odometer reading at each transfer, facilitating investigation of odometer fraud. Disclosures also provide the transferee with important information, such as that the odometer reading is not accurate.

The Act requires that a person transferring a motor vehicle's title to give the transferee a written disclosure of the mileage registered by the odometer or a disclosure that the mileage is unknown if the transferor knows the mileage registered by the odometer is incorrect. 49 U.S.C. §32705(a). The Act also indicates that the disclosure must be in compliance with National Highway Traffic Safety Administration ("NHTSA") regulations, which specify the disclosure requirements in more detail. 49 C.F.R. pt. 580.

**b.   *The Dealership Falsely Stated that Mileage was Accurate on the Transfer Form.***

The content of the required mileage disclosures is essentially the same, whether made on the title, on a power of attorney, on a reassignment document, on a separate disclosure statement, or electronically. *See,* 49 C.F.R. § 580.5(a), (b), (g); 49 C.F.R. §§ 580.13(a), 580.14(b). The transferor discloses the odometer reading at the time of the transfer and whether the reading is accurate. 49 C.F.R. § 580.5(c)(1) and (e).

After Mr. Hue paid his money and several days after the Van was delivered to Mr. Hue in California, the Dealership provided Mr. Hue with a title assignment that falsely averred under

-10-

penalty of perjury that the mileage was accurate. [Compl ¶26; DE- 10-1] But the NAM Disclosure in the assignment to the Dealership by the prior owner stated that the mileage reading of 8,041 was "***not actual mileage***." [Compl ¶26; DE- 10-1] The Second Mileage Representation is objective, incontrovertible proof that the disclosures at the time of purchase were false.

### c.   The Dealership Provided Additional False Disclosures of the Mileage Reading for the Van

A false statement on the disclosure form violates the Act's disclosure requirements. In addition, the Act states that a person who transfers ownership of a vehicle may not "give a false statement to the transferee in making the disclosure required by [NHTSA's odometer disclosure] regulation."  This language covers not just false statements made on the disclosure form, but false statements made in connection with making the disclosure. Thus, oral statements, advertising, and written claims found in documents other than the disclosure form are covered, as long as these statements are related to the making of the disclosures. *See, Hughes v. Box,* 814 F.2d 498 (8th Cir. 1987); *Ryan v. Edwards*, 592 F.2d 756 (4th Cir. 1979).  Because the disclosures must be made as part of the process of transferring title, representations related to a sale are related to the process of making the disclosures.

In *Ryan*, the Fourth Circuit has found the Act applied to a car dealer's false newspaper advertising that described a car as "low mileage" and to false oral statements concerning mileage. *Id.* at 759. The Court stated: "[a] transferor cannot insulate himself from liability under the statute by completing the odometer disclosure statement correctly, and then contradicting that statement with false oral claims." *Id.*

-11-

In addition to the Second Mileage Representation, the Dealership made false statements as mileage both on the phone with Mr. Hue and then again in writing in the Buyer's Order (Compl.- ¶¶ 13-14; Ex. "A" and "B" respectively).   In both instances, the Dealership represented to Mr. Hue that the odometer reading for the Van was 8,000 and 8,021 miles respectively and that by implication that the odometer was accurate. As the undisputed facts show, neither was true.

In its Motion to Dismiss, the Dealership attempts to wave-off its violation of the Act by arguing that the difference in mileage readings was "*allegedly twenty miles lower*." (Mot. to Dismiss- p.1).  As such, the Dealership utterly obscures the fact that the NAM Disclosure did not just say that the mileage was different from what was told to Mr. Hue, but that the odometer did not show "***actual mileage***."  For all Mr. Hue and the world knows, the mileage of the Van could be anything from 8,000 miles to a million miles more than what is shown. As the Van was used in an Amazon fleet, the compelling force of reason suggests that the mileage was greatly more than Mr. Hue was told. The odometer could have been tampered with, replaced, reset, broken or altered. In short, the how and why the mileage is wrong is uncertain to everyone but the Dealership.

The effect of the "not actual mileage" disclosure is also clear: the difference in value of a car with such a branded title is significant. Mr. Hue bargained for (and paid for) a Van with an unbranded title and an accurate odometer. He got neither.

**B.   UNDER THE BINDING 11th CIRCUIT PRECEDENT OF *OWENS v. SAMKLE AUTOMOTIVE INCORPORATED*, 425 F. 3rd 1318 (11th Cir. 2005), THE DEALERSHIP COULD ONLY SATISFY THE DISCLOSURE REQUIREMENT BY PRODUCING THE VAN TITLE FOR INSPECTION AT THE TIME OF PURCHASE AND NOT AFTER CONSUMATION.**

In 1986 Congress amended the Federal Odometer Act to require that the odometer disclosure be made on the title certificate. S.Rep. No. 99-47, at 1-2 (1986), reprinted in 1986

U.S.C.C.A.N., 5620, 5621.  "The central purpose of [the statute] is to make the title document the sole vehicle for odometer disclosures, thereby completing a years-long movement among the States toward the use of the title for disclosure."  See, Supplementary Information to 1991 Final Rule, 56 Fed. Reg. 47,681, 47,684 (1991).  Disclosure on the title was required because "using a separate document for odometer disclosure, which had been common in the early days of the Federal odometer law, had been shown to be too vulnerable to abuse." *Id*.  Thus, with the 1986 amendment, Congress gave the Federal Odometer Act an additional "central purpose" by requiring the title document to be the *only* place for the disclosure under the Act. *See, Owens v. Samkle Automotive, Inc.*, 425 F.3d 1318 (11th Cir. 2005).

In *Owens*, the aggrieved car buyer purchased a used car which had been previously owned by a car rental company. In reversing the district court, the Eleventh Circuit held that the car dealer, in violation of the regulations promulgated under the Odometer Act, had not disclosed the automobile's mileage in writing "on the title," but rather on a separate odometer disclosure statement, in an attempt to conceal from the buyer that her car had been previously owned by a car rental company. *Id.* at 1325.

In the same fashion as the Defendant here, the dealership in *Owens* argued that the Odometer Act required fraudulent intent with respect to the disclosure of mileage. The Eleventh Circuit, however, disregarded the argument, reasoning:

> Therefore, to limit private civil suits under Section 32710(a) only to instances where the defendant intended to defraud the victim with respect to the vehicle's mileage runs counter to the purposes of the private civil remedy — to compensate victims for harm suffered *and* to ensure strict compliance with the Odometer Act's provisions.  Both purposes are also reflected in the text of Section 32710(a). The violator must make the victim whole, but also must pay an additional price — either double the actual damages or up to $1,500 — as a penalty for violating the Act. 49 U.S.C.§32710(a)(2000).  It would therefore be inimical to a private civil remedies

-13-

function as the Act's primary enforcement mechanism to limit its reach to instances where the defendant intended to defraud its victim "with respect to a vehicle's mileage."  Such a reading neither comports with the statute's plain language, nor accords with its remedial purpose.

*Id.*

The Eleventh Circuit has adopted a more expansive view of the role of the Odometer Act to prevent fraud in motor vehicle sales than other Circuits. **As seen above, the 11th Circuit recognized that a claim exists where the fraud relates to matters other than the vehicle's mileage**. *Contrast, Bodine v. Graco, Inc*. 533 F. 3rd 1145 (7th Cir. 2008); *Iofee v. Skoie Motor Sales, Inc*., 414 F. 3rd 708 (7th Cir. 2005).

In the instant case, Dealership violated the disclosure requirements of the Act in two ways. First, as discussed above, the Dealership made false statements as to the mileage of the Van. Second, the Dealership concealed the fact that the Van had both an inaccurate odometer and a salvage brand by not showing the title until long after receiving payment and after the Van was delivered.

Mr. Hue is mindful that the purchase transaction was completed without either party physically meeting as he lives in California and the Dealership is in Florida. But with the rapid advances in e-commerce, transactions to buy and sell cars are now routinely completed remotely, especially during the on-going pandemic. The Dealership could have sent an image of the Minnesota Salvage Title to Mr. Hue by email just as it had sent the Buyers Order. But then Mr Hue would not have agreed to the purchase.  By concealing the Minnesota Salvage Title until after the transaction was consummated, the Dealership violated the Act.

### C. THE COMPLAINT PROVIDES SUFFICIENT FACTS TO SHOW THE DEALERSHIP HAD THE REQUISITE INTENT UNDER THE ODOMETER ACT WHEN IT MADE MULTIPLE FALSE STATEMENTS

**AS TO MILEAGE ACCURACY AND THE SALVAGE HISTORY OF THE VAN.**

> 1. **The Odometer Act does not require the plaintiff show the defendant had actual knowledge of the odometer inaccuracy to establish intent to defraud.**

The Act's disclosure requirements are central to the Act's effectiveness. Even if a transferor has not tampered with an odometer (in fact, even if an odometer was never rolled back), a transferor may violate the Act by violating the disclosure requirements. *See, Ryan v. Edwards,* 592 F.2d 756, 760 n.4 (4th Cir. 1979) (tampering and disclosure violations are alternative claims under the Act); *Resendiz v. Eatinger*, 1990 WL 84527 (N.D. Ill. June 8, 1990). Disclosures are important because they create a paper trail of the odometer reading at each transfer, facilitating investigation of odometer fraud. Disclosures also provide the transferee with important information, such as that the odometer reading is not accurate.

The Act requires that a person transferring a motor vehicle's title to give the transferee a written disclosure of the mileage registered by the odometer or a disclosure that the mileage is unknown if the transferor knows the mileage registered by the odometer is incorrect. 49 U.S.C. §32705(a). The Act also indicates that the disclosure must be in compliance with National Highway Traffic Safety Administration ("NHTSA") regulations, which specify the disclosure requirements in more detail. 49 C.F.R. pt. 580.

> 2. **Reckless disregard or gross negligence with respect to an odometer disclosure satisfies the Act.**

The Eleventh Circuit has analyzed very few cases involving claims under the Odometer Act. However, other circuits have delved into the criterion and standards under the statute. The

-15-

Fifth Circuit Case of *Nieto v. Pence*, 578 F.2d 640 (5th Cir. 1978) is illustrative of the majority view. In *Nieto,* the court held that:

> a transferor who lacked actual knowledge may still be found to have intended to defraud and thus may be civilly liable for a failure to disclose that a vehicle's actual mileage is unknown. A transferor may not close his eyes to the truth. If a transferor reasonably should have known that a vehicle's odometer reading was incorrect, although he did not know to a certainty the transferee would be defrauded, a court may infer that he understood the risk of such an occurrence.

*Id.* at 642.  Numerous other circuits have held that absent actual knowledge, a transferor can still be found to have the requisite intent to defraud if they exhibited gross negligence or a reckless disregard for the truth. *See, Rogers Motors of Hermiston, LLC v. Bartlett, LLC,* 2018 WL 616138 (E.D. WA Jan. 29, 2018*); Suiter v. Mitchell Motor Coach Sales, Inc.*, 151 F.3d. 1275, 1282 (10th Cir. 1998); *see also, Tusa v. Omaha Auto. Auction, Inc.*, 712 F.2d 1248, 1253-1254 (8th Cir. 1983); *see also, Ryan v. Edwards,* 592 F.2d 756, 762 (4th Cir. 1979) (holding that constructive knowledge, recklessness, or even gross negligence in determining and disclosing the actual mileage traveled by a vehicle have been held sufficient to support a finding of intent to defraud); *see also Aldridge v. Billips,* 656 F. Supp. 975, 978-979 (W.D. Va. 1987) (concluding that mere reliance on the odometer reading, in the face of other readily ascertainable information from the condition of the vehicle constitutes a reckless disregard that rises to the level of intent to defraud, as a matter of law).

In *Williams v. Toyota of Jefferson, Inc.,* the plaintiff purchased a BMW from the defendant auto dealer. 655 F. Supp. 1081, at 1083 (E.D. La. 1987). The BMW's odometer read 54,124 miles at the time of sale. *Id.* Thereafter, the odometer failed to register additional mileage was determined to be inoperable and incapable of recording mileage. *Id.*  Prior to the sale, the defendant had

Case 0:21-cv-60277-JEM   Document 11   Entered on FLSD Docket 04/02/2021   Page 17 of 21

possession of the BMW for six months and performed extensive repairs on the vehicle. *Id.* at 1083-1084. The court considered the standard in *Nieto* and found that the dealer was liable. *Id.* at 1085. The court stated that the defendant "had possession of the car for six months prior to the sale to [plaintiff], and had performed extensive repairs, which should have brought to light the fact that the odometer was nonfunctional, and what that fact implied about the accuracy of its reading." *Id.*

Similarly, in the case of *Auto Sports, Inc. v. Bruno Auto Dealers, Inc.*, the defendant dealer sold a vehicle to the plaintiff dealer with incorrect mileage. 721 F. Supp. 63 (S.D.N.Y. 1989). The defendant sought summary judgment, arguing that it had no knowledge that the odometer had been tampered with, nor did they claim to know that the stated mileage was incorrect. *Id.* at 65. Here, the court also rejected a strict construction of the statute that would require proof of actual knowledge. *Id.* at 65-66. The court referenced legislative history, stating that "the test of 'knowingly' was incorporated so that the auto dealer with expertise now would have an affirmative duty to mark 'true mileage unknown' if, in the exercise of reasonable car, he would have reason to know that the mileage was more than that which the odometer recorded." *Id.* (quoting 1972 U.S. Code, Cong. & Adm. News, 3960, 3971-72). The court also stated that "one may not consciously avoid learning that the true mileage of a vehicle is not as it appears on the odometer. Factual circumstances such as would alert a seller to the probable inaccuracy of the odometer give rise to a duty to further investigation." *Id.* at 66. The court ultimately rejected the defendant's motion for summary judgment, citing the need for additional discovery to determine whether the defendant's conduct was reasonable under the circumstances. *Id.; see, also, Fowler v. Elegant Auto Finance, LLC,* 446 F. Supp. 3rd 966 (M.D. Fla. March 17, 2020).

Most recently, in *Elegant Auto Finance*, much like in the instant case, a buyer of a used

-17-

motor vehicle brought action against seller under the Federal Odometer Act, alleging that the odometer disclosure at time of sale indicated vehicle's "actual mileage" but the post-sale odometer disclosure indicated that the mileage at time of sale was higher, but the higher number was "not the actual mileage." *Id*. at * 968.  In denying summary judgment for the seller, Senior Judge James Moody of the Middle District of Florida opined:

> Under the Act, "a transferor who lacks actual knowledge that the odometer reading is incorrect may still have a duty to state that the actual mileage is unknown." *Nieto v. Pence*, 578 F.2d 640, 641 (5th Cir. 1978). "If a transferor reasonably should have known that a vehicle's odometer reading was incorrect, although he did not know to a certainty the transferee would be defrauded, a court may infer that he understood the risk of such an occurrence." *Id.* at 642. In other words, "A transferor may not close his eyes to the truth." *Id.* So a transferor who lacks actual knowledge can still be liable under the Act if the buyer demonstrates "constructive knowledge, recklessness or gross negligence" by the transferor. *Coleman v. Lazy Days RV Ctr., Inc.*, No. 8:05-CV-930-T-17TBM, 2007 WL 2021832, at *2 (M.D. Fla. July 12, 2007).
>
> <em>Id.* 969</em> (footnote omitted)

In his Complaint, Mr. Hue has alleged that the Dealership falsely represented that the Van's mileage was accurate in at least three instances. One of the false statements was made on the transfer application - despite the prior owner disclosing the exact opposite only a few months before. And that statement was under oath. At the very least, it is the height of recklessness.

**D.     THE COMPLAINT SATISFIES FED. R. CIV. P. 9 (b) WITH RESPECT TO ALLEGING FRAUD WITH SPECIFICITY**

In its Motion to Dismiss, the Dealership challenges the common law fraud claims (Counts III, IV and V) with a bald statement that the fraud was not pled with particularity.  (Mot. to Dismiss- p. 3). This is a strategy that is employed by many defendants facing a claim of fraud: cite the Rule[4] and hope that the Court bites. *Cf.*, *Doe v. Roe*, 2018 WL 4698886 *1 (S.D. Fla.

---

[4] In the instant case, the Dealership relied on "Florida Rule of Civil Procedure 1.20(b) [sic]."

Sept. 18, 2018); *Erin Taylor Editions v. Antar*, 2019 WL 2016192 *7 (S.D. Fla. March 29, 2019).

Rule 9, Fed. R. Civ. P. provides:

> **(b) Fraud or Mistake; Conditions of Mind.** In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.
>
> Rule 9, Fed. R. Civ. P.

In all due respect to the Dealership, the feigned ability to frame a response to the fraud claims smacks of dilatory gamesmanship. With Rule 9 in mind, Mr. Hue was careful to be clear and concise when he provided averments of fraud. To be sure, selling a wrecked, salvaged vehicle with a bum odometer by lying and concealment would seem to fit hand in glove with hornbook fraud.

### E. THROUGH THE FILING OF AN ANSWER, THE DEALERSHIP WAIVED THE RIGHT TO FILE A MOTION TO DISMISS UNDER FED. R. CIV. P. 12 (b)(6).

In addition to its Motion to Dismiss, the Dealership also filed a paper entitled "Answer and Affirmative Defenses to Counts II, VI, VII and VII" ("Partial Answer").  The Federal Rules of Civil Procedure, however, do not contain any provision allowing for partial answers of the sort Defendant has filed. Indeed, the Rules contemplate that there will be but **a single answer to a complaint**, regardless of the number of claims that complaint may alleged. See FRCP 7(a) ("[t]here shall be ... *an* answer....") (emphasis added); 12(a) ("[a] defendant shall serve *an* answer....") (emphasis added). Thus, the procedure followed by Defendant, though perhaps well-intentioned, is not proper under the applicable rules.

-19-

The Rules mandate the filing of a single answer to a complaint. *See, e.g., Perkins v. Univ. of Illinois,* 1995 WL 680758 (N.D.Ill. Nov. 9, 1995). As other courts have noted, if the courts require a defendant to answer in "piecemeal fashion," a "procedural thicket would emerge. Thorny questions would arise as to how the case should proceed pending resolution of the motion." *Ricciuti v. New York City Transit Auth.,* 1991 WL 221110 at *2 (S.D.N.Y.1991).

"A defendant is not required to file an answer until [the] court disposes of the motion to dismiss." *Smith v. Bank of America, N.A.,* 2014 WL 897032, at *9 (M.D. Fla. Mar. 6, 2014) (citing L*ockwood v. Beasley*, 211 F. App'x 873 (11th Cir. 2006)). "An Answer filed contemporaneously with the filing of a Motion to Dismiss renders the motion moot and makes it procedurally impossible for the Court to rule on the motion to dismiss." (quotation marks omitted)); *Zucco Partners, LLC v. Findwhat.com,* 2005 WL 5921170, at *1 n.2 (M.D. Fla. July 27, 2005) (denying as moot defendants' motions to dismiss in light of answers filed by defendants).

As the Partial Answer was not permitted, the Court should either strike same or hold that the Dealership has waived the right to file a motion under Rule 12(b)(6).

## IV.  CONCLUSION

As detailed in the above argument, Mr. Hue has alleged sufficient facts to support his claims for common law fraud and violation of the Odometer Act against Samuel's Auto.

In the event the Court determines that Mr. Hue has not properly or completely pled any material issue, Mr. Hue would respectfully request this Court grant Mr. Hue leave to make appropriate amendments so as to proceed further.

*/s/ Robert W. Murphy*_____
ROBERT W. MURPHY, ESQ.
Florida Bar No.: 717223
1212 S.E. 2nd Avenue
Fort Lauderdale, FL 33316
Telephone: (954) 763-8660
Facsimile: (954) 763-8607
rwmurphy@lawfirmmurphy.com
legalassistant@lawfirmmurphy.com
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 2, 2021, I electronically filed the foregoing Memorandum in Opposition to Motion to Dismiss with the Clerk of Court via the United States District Court for the Southern District of Florida CM/ECF. I further certify the foregoing document is being served this day on all counsel of record designated below either via transmission of Notices of Electronic Filing generated by CM/ECF of in some other authorized manner for counsel or parties who are not authorized to receive electronic Notices of Filing:

Arthur J. Jones, Esq.
The Arthur Firm, P.L.
4770 Biscayne Blvd., Ste. 1250
Miami, FL 33137
E-Mail: thearthurfirm@gmail.com
*Counsel for Defendant*

*/s/ Robert W. Murphy*
Attorney

-21-